R. E. STALLCUP v. J. T. ROBISON, COMMISSIONER OF GENERAL LAND OFFICE.

No. 4798. Decided November 30, 1927.
(300 S. W., 24).

*R. E. Stallcup, in pro per,* and *Chas. L. Black,* for relator.

We are not prepared to contest the correctness of the holding of the Assistant Attorney-General, to the effect that the omission from the Code of Chapter 106 did not work a repeal of the same.

But the action of the codifiers, in omitting Chapter 106, is not the only fact that affects the question at issue. It seems to us that said Chapter 106 of the Acts of the Thirty-eighth Legislature, Regular Session, has been repealed or superseded by another law relating to the same lands and covering the same subject, enacted in 1925, at the Regular Session of the Thirty-ninth Legislature—the same session that adopted the Code. That is, we do not rely upon the omission of the Chapter from the Code, but upon the passage of another law at the same session of the Legislature.

We refer to Chap. 130, General Laws of the Thirty-ninth Legislature, 1925, p. 332, which is an amendment of Chap. 163 of the General Laws of the Thirty-sixth Legislature, and, correctly construed, said Chap. 163 together with said Chap. 130 now govern the sale of *all* lands belonging to the Public Free School Fund.

The requirement that all of said surveyed school lands shall be sold "under the regulations and upon the terms and conditions provided in this *Act*" refers to Chap. 163 of the General Laws of the Thirty-sixth Legislature, 1919, as amended by Chap. 130. This is a comprehensive provision. Its effect is to require that all "surveyed public school land" shall thereafter be sold "under the regulations and upon the terms and conditions provided in *this Act*." "This Act," as before stated, is Chap. 163 of the General Laws of the Thirty-sixth Legislature, 1919, as thus amended by Chap. 130.

The effect of said Chap. 130 is to bring all unsold surveyed public school lands in the State within the terms and provisions of the Act of 1919, as thus amended. Its effect was to unify the entire subject matter and to provide a single law regulating the sale of the surface estate in all of these lands.

As the result of such amendment, we should now refer to said Act of 1919 (Chap. 163; as amended by said Chap. 130), to determine how the surface estate in any unsold surveyed public free school land may be sold, and whether and *what interest* in the minerals has been reserved. This seems to us perfectly clear.

The petition alleges that the lands involved here—a part of the Capitol Syndicate recovery—were surveyed prior to January 1, 1925, and classified as mineral, and the same therefore were a part of the unsold *surveyed lands* belonging to the Public Free School Fund at and long before the time of the enactment of said Chap. 130, Laws

of 1925. These lands, at the time of the passage of said Act, were a part of "all of the surveyed public free school land then unsold," and were included within the scope of said Act, unless we are able to find something disclosing the legislative intent that this comprehensive language "all of the surveyed public free school land" should not include the unsold surveyed lands finally recovered in the Capitol Syndicate suit.

In this connection, it is quite manifest that Chap. 106, General Laws of the Thirty-eighth Legislature, was primarily designed to donate the recovered Capitol Syndicate lands to the Public School Fund and to provide the means of surveying the same, including an appropriation for that purpose. In enacting this particular law, the Legislature was not attempting to define how the land should be sold. For that purpose, reference is made to existing law. The primary object of the Act was to accomplish a donation of the lands to the school fund and to provide for their survey, to the end that they might be sold under existing law. The very fact that the Act contains no detailed provisions, prescribing the manner in which the lands might be sold, furnishes an added reason to support the argument now advanced that the Legislature, in enacting Chap. 130, General Laws of the Thirty-ninth Legislature, intended to include these lands within said general law. The absence of any detailed plan or regulations, governing the sale of such lands, furnishes a reason for putting them within the terms of the general sales law. It creates the necessity for a reference to the general sales law. It is, therefore, manifest, we submit, that the language of said Chap. 130, "all of the surveyed public free school lands *then* unsold" ("then" referring to September 1, 1925), is broad enough to include unsold surveyed Capitol Syndicate lands, and was intended by the Legislature to include such lands. The absence of any adequate law, prescribing the manner of selling such lands, furnished a reason for including them within the general law, and the language of the general law is comprehensive enough to include such lands.

*Claude Pollard,* Attorney-General, and *C. W. Truehart,* Assistant Attorney-General, for respondent.

Relator's position that Chap. 106 of the Acts of 1923, or at least Sec. 3 thereof, is not now the law, indeed takes no account of the omission of the provisions thereof from the 1925 codification, but his position is simply that the said provisions of Chap 106 of the Acts of 1923 have been repealed or superseded by Chap. 130 of the

Acts of the Thirty-ninth Legislature; and this is the first question for determination.

Chap. 130 of the Acts of the Thirty-ninth Legislature purports to be an amendment of Secs. 1, 3 and 5 of Chap. 163 of the Acts of 1919, and it does not purport to be, and is not in its effect an amendment, either express or implied, of Chap. 106 of the Acts of 1923. Courts may not presume that the purpose of the legislative Act is other than that clearly expressed in the caption of the bill. Hennessy v. Ins. Assn., 282 S. W. (Com.), 791. See Secs. 273–275 of Lewis' Sutherland on Stautory Construction.

The crux of the case is this: Does Chap. 130 of the Acts of 1925 actually change the law of 1919 with respect to reservation of minerals in the unsold surveyed public school lands? If it does not, it is immaterial to any present inquiry. Since it does not, the situation simply is that with the same general law then in effect as now, the Legislature in 1923 by Chap. 106 created an exception with respect to a certain kind of land, namely, Capitol Syndicate land, which would otherwise have been included within the general terms of the reservation provisions of the 1919 Act, and with respect to such particular lands declared that instead of being sold with a reservation of the entire mineral estate, they should be sold with a reservation of only one-eighth thereof, and that the other seven-eighths of such mineral estate should be sold together with the surface estate. If in construing the general rule presented by the Act of 1919, together with the particular rule or exception presented by the Act of 1923, the said subsequent legislation of 1923 repeals pro tanto the prior legislation of 1919, then the whole question is solved; for neither the Act of 1925 (Chap. 130) nor any of the provisions of the 1925 codification alter or amend Chap. 106 of the Acts of 1923.

Where a general statute is followed by one special in scope, effect will be given to both by construing one as an exception from the general terms of the other. City of Marshall v. Bank, 127 S. W., 1083; see also Jessee v. de Shong, 105 S. W., 1011.

When an Act is amended as to but one section, the original provisions appearing in the amended Act are to be regarded as having been the law since they were first enacted, and as still speaking from that time. Shipley v. Ind. School. Dist., 250 S. W. (Com.), 159 (German).

It is well settled that special legislation or local laws (and the Act of 1923 is specialized and localized as being applicable to Capitol Syndicate land only) are not repealed by a later general Act, unless

specially mentioned in the general law or such purpose is made manifest from the plain provisions of the general law. Paul v. State, 106 S. W., 448, 452, and authorities there cited.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

On May 13, 1926, upon proper application therefor, the Commissioner of the General Land Office issued a permit to R. E. Stallcup, authorizing the latter to prospect for oil and gas within and beneath the surface thereof on some 1,867.6 acres of public school land in Hartley County, Texas, known as Secs. 14, 24, 25, 26, 50 and 51, Block CS.

On October 2, 1926, the Commissioner canceled said permit because of an opinion rendered by an Assistant Attorney-General of this State, acting for his department.

In due season Stallcup applied for permission to file a petition for mandamus in the Supreme Court, requiring the Commissioner to reinstate aforesaid permit. Said permission was granted and the cause is before us for recommendation. At the time the permission for the filing of the petition was granted the Supreme Court had before it, as an exhibit to the petition, a copy of the opinion aforesaid, and also a brief from the Attorney-General's Department in support of its opinion.

The land here involved still belongs to the State and the so-called "relinquishment" statute is in nowise involved in this proceeding. All the facts alleged in the petition are admitted by respondent. The record shows that this permit must be reinstated unless we hold two things: (1) That Chap. 106, p. 222, Acts of the Thirty-eighth Legislature, passed in 1923, should be *construed* as the Attorney-General contends; (2) that such Act, *if so construed,* was *not* "altered or amended" by Art. 5309 of the Revised Statutes of 1925. If either of these contentions fail, the mandamus must be awarded.

The Act of 1923 was passed for certain purposes relative to the excess acreage recovered by the State in the so-called Capitol Syndicate suit. The caption of the Act reads as follows:

"An Act appropriating to the Permanent Public School Fund whatsoever land that may be recovered to the State finally in the case of the State of Texas against George Findlay and others in the Capitol Syndicate Land Suit, and providing for the survey and sale of same with a reservation of minerals and making appropriation for a survey of the land, and declaring an emergency."

We shall not quote that portion of the Act appropriating $5,000 to pay the expense of surveying these lands, some 60,000 acres, since that part of the Act is not here involved. We do quote the other sections of the Act as follows:

"SECTION 1. Whatever land that may be recovered to the State finally in the suit now pending in courts and styled the State of Texas against George Findlay and others, is hereby appropriated to' the Permanent Public School Fund.

"SEC. 2. When said land shall have been recovered, segregated and set apart to the State, in the manner provided in the court's final decree, the Commissioner of the General Land Office shall have it surveyed and classify and value same, and offer it for sale and sell it in the manner and upon the terms and conditions now provided by law for the sale of surveyed school land, except as provided herein.

"SEC. 3. The sale of said land shall be upon the express condition that one-eighth of all the oil and gas, whether known or unknown, and the value of same and all of all other minerals of whatsoever kind, whether known or unknown, that may hereafter be found on or under said (land) bond and the value of same, shall be reserved to the State and said portion of oil and gas and the value of same, together with all other minerals, and the value of same, are hereby donated to the said School Fund. Said oil and gas and other minerals shall be subject to be developed in the manner that is now, or that may be hereafter, provided by law."

It is the' contention of the Attorney-General that the Legislature intended to adopt an entirely different rule in the sale of these Capitol Syndicate lands, so far as oil and gas were concerned, in that the sale of the surface estate in the land also covered seven-eighths of the oil and gas. In other words, that the State retained *one-eighth* of such minerals only instead of *all* of them, as is true with reference to all other public school lands. Counsel for respondent says this is the necessary *implication* of the Act; that, in retaining one-eighth, it necessarily directed a sale of the other seven-eighths interest. In making this' contention, said counsel concede that there is no apparent reason why the State should give up seven-eighths of the oil and gas in these lands which would be retained in all other public school land sales. And it is also apparent that, if this Act be so construed, it will be the only instance in the legislative history

of this State when the State retained only *a part* of the *minerals*. In other words, the State has either sold or released *all* the minerals in selling its lands, or it has *reserved all*. In no other instance has it sold part and reserved part of the minerals. The legislative history, in this respect, is interestingly traced by Justice Phillips in the cases of Cox v. Robison, 105 Texas, 426, 150 S. W., 1149, and Greene v. Robison, 109 Texas, 367, 210 S. W., 498.

Furthermore, the Attorney-General concedes that, if his construction be adopted, the Legislature has provided no method for the development of the one-eighth interest reserved by the State; that the purchaser of the surface estate and the other seven-eighths of the oil and gas could go ahead and develop and use his property, but that the State would be without any method of protecting and developing its rights in its one-eighth interest. The question naturally arises as to whether or not the Legislature intended to prevent or delay the State in developing its interest in this oil.

And, in connection with this last statement, the Attorney-General also concedes that, if his construction of Sec. 3 of the Act of 1923 be correct, the Legislature did a useless thing when it stated in said section that the oil and gas reserved by the State should be subject to be developed in the manner *now* provided by law. This, for the reason that no method was then provided for developing such a one-eighth interest in the oil.

Again, if the Attorney-General's construction be correct, then it means that the Legislature has been derelict in not providing for the sale of these lands and minerals as required by our Constitution. The Legislature has always been prompt in providing for such sales, both of the surface estate and the minerals. As stated by the court in Cox v. Robison, supra, the Legislature began, with the Act of April 12, 1883, to *reserve minerals* in the public lands. Prior to that time, it had been the policy to *release all minerals* to the owners of the surface estate. And, as said by the court in Greene v. Robison, supra, the Legislature, also in 1883, passed the Mining Act, a companion Act to the Act of April 12, 1883. In speaking of this *Mining Act,* Chief Justice Phillips said:

"The subject matter of the Mining Act was the minerals in the school and asylum lands. It was enacted to give beneficial effect to the reservation of those minerals expressed in the Act of April 12 and repeated as one of its own sections, by providing a method whereby they might be made of use to the State as well as individuals. The plan adopted did not involve their sale, but provided for the

granting of mining claims for the working of mines containing the minerals, upon a royalty basis."

And, from that early date to this, the State has provided a method for development of its minerals of every kind, usually on a royalty basis of some kind. Should it be said that, for the first time and only time in its history, the Legislature intended to pass an Act and provide no method for development of its reserved oil and gas interest therein? In view of the various concessions which the Attorney-General must make in contending for his construction of the Act of 1923, we are inclined to doubt its correctness. To do so would indict the Legislature in several respects in a way which we think unreasonable and unwarranted. On the other hand, we are inclined to believe that counsel for relator have properly construed said Act when they say:

"We submit that a proper construction of the vague and general language used in this Act is this: The surface estate is to be sold as provided by law and the mineral estate sold in the same way. Sec. 3, which states that one-eighth of the minerals shall be reserved, is but a loose way of stating the effect or the result of applying the general law with respect to the acquisition of surface and mineral estates. That result is that said purchaser of the mineral estate acquires a seven-eighths interest and the school fund reserves one-eighth interest."

It is evident that the codifiers so construed the Act. We think they must have omitted it from the Revised Statutes, because they thought its purposes had already been served. The lands had been surveyed and had become a part of the Public School Fund prior to the report of the codifiers. And, they must have thought that the lands were to be sold as all other public school lands. If the codifiers had construed the Act as the Attorney-General does, there would be no reasonable excuse for omitting the Act from the Revised Statutes, thereby requiring interested parties to make an investigation *beyond the Code* in order to ascertain the law upon the subject. It is apparent that the codifiers *attempted* to carry forward all public land laws unless they had already served their only purpose, or unless they were substituted by new articles amending or altering the former ones.

It is true, of course, that the *mere omission* of a school fund law by the codifiers does not render it ineffective unless the same has been "altered or amended." This saving clause is a part of the Revised Statutes of 1925.

We do not find it necessary to construe the Act of 1923 aforesaid. For that reason, we do not construe it. If it should be construed, as *relator* contends, then the mandamus must issue, as all counsel concede. On the other hand, if it should be construed as the *Attorney-General* contends, then we think it perfectly clear that the Thirty-ninth Legislature, as shown by its General Laws, Chap. 130, p. 332, has altered or amended the Act of 1923 so as to authorize the sale of the Capitol Syndicate lands and the minerals thereunder under the general statutes which govern other school lands. If we are correct in this view, then all attorneys in the case concede the mandamus must issue and this permit be reinstated. Does the Act of 1925, aforesaid, inserted by direction of the Legislature in the Revised Statutes of 1925, alter or amend the Act of 1923 in the respect stated?

Sec. 1 of the Act of 1919, effective at the time the aforesaid Act of 1923 was passed, reads as follows:

"SECTION 1. On the first day of September, 1919, and the first day of each January, May and September of each year thereafter, all the unsold lands set apart for the benefit of the Public Free School Fund, the Lunatic Asylum Fund, the Blind Asylum Fund, the Deaf and Dumb Asylum Fund, the Orphan Asylum Fund, which have heretofore been surveyed or that may hereafter be surveyed and unsold portions of same shall be subject to sale by the Commissioner of the General Land Office under the regulations and upon the terms provided in this Act; provided, no land leased before the passage of this Act shall be subject to sale until the first sale date after the termination of the lease. No corporation shall purchase any land under this Act."

This section was replaced in 1925 by what is now Art. 5309 of the Revised Statutes, reading as follows:

"ART. 5309. On the first day of September, 1925, and the first day of each January, May and September of each year thereafter all of the surveyed public free school land then unsold and portions of same and all tracts theretofore surveyed for which field notes were returned to and filed in the General Land Office and which reverted to the public domain or the Public Free School Fund, and those surveys for which field notes were returned to and filed in the General Land Office and cannot be legally patented under existing law; and such sold public free school and asylum land as may be forfeited or canceled for any cause prior to the sale date for which the land

may be advertised and such unsurveyed land as may hereafter be recovered for the Public Free School Fund upon suit by the Attorney-General filed prior to the acquisition of rights to purchase the area as unsurveyed land, 'shall be subject to and offered for sale by the Commissioner of the General Land Office under the regulations and upon the terms and conditions provided in this Act."

The Attorney-General insists that the *Act of 1919* was broad enough to cover the Capitol Syndicate lands and would have done so but for the terms of the so-called Special Act of 1923. And, the same counsel further insist that the *additions* to the Act of 1919 inserted in the Act of 1925 were *unnecessary* in order to include such lands. This is true. But, the Act of 1919 was a more or less *general* provision covering lands belonging to the various funds. However, the Act of 1925 is not only *similarly general,* but also proceeds to *particularize.* As we view it, the Legislature showed an *unmistakable* intent, in the Act of 1925, to have *all* of its public lands thereafter sold under the terms of the general Act which called for the reservation of *all* oil, gas and other minerals. The language not only covers the land belonging *at that time* to the schools, but land which might thereafter revert to the schools. Not only so, but the Legislature included lands which might thereafter be recovered for the State by the Attorney-General. Since all the lands *theretofore* recovered by the Attorney-General had already been surveyed, prior to. 1925, and had already taken their place in the School Fund, it was not necessary to refer to such *prior* recoveries. But they did include *future recoveries.* We submit that no plausible reason can be perceived for ascribing to the Legislature a *different intention* as to *prior* and *future* recoveries by the Attorney-General. If the latter were to be included in the general Act, why not the former? It is clear that the *location* of the land to be recovered in the future was to have no bearing upon this issue. It might be recovered anywhere. The result would be the same. Therefore, since the location of the future recoveries was to be immaterial, it seems equally clear that the location of the Capitol Syndicate lands would constitute no ground for ascribing to the Legislature a different intention with reference thereto. We cannot escape the conclusion, after reading Art. 5309, supra, that the Legislature intended to say that there was to be but one law with reference to reservation of minerals in public lands and that was a reservation of all of said minerals.

It is true that the Act of 1925 does not *expressly* include Capitol Syndicate lands. But, the changes made in the Act *necessarily*

implied their inclusion. We think this *implication* is *at least* as thoroughly justified as the *implication* the Attorney-General reads into the Act of 1923 to the effect that seven-eighths of the oil was to be sold with the surface estate. If the latter was in error in that implication his whole case fails even if we had held that the Act of 1923 was not altered or amended by the Act of 1925.

We find it difficult to believe that the Legislature would have allowed four years to pass since 1923 without providing for the sale and development of the State's oil interest in these *particular* lands, if the Act of 1923 was to be construed as the Attorney-General insists it should be. It is a matter of common knowledge that this section of Texas has had an unusual oil boom for many months. If the Fortieth Legislature had not felt that the Thirty-ninth Legislature had provided for developing the State's oil interest in these Capitol Syndicate lands, we feel that, in all reason, it would have passed an Act caring for this situation.

We decide but one thing, and that is that since the Act of 1925, supra, became effective, the Capitol Syndicate lands are to be sold with a reservation of *all* oil and gas to the State, and that the Capitol Syndicate lands will fare just as all other public school lands fare. Since this is true, its oil and gas are to be developed under the general permit statute. This permit was issued in 1926, after the Act of 1925 became effective, and the general permit law was concededly followed by relator.

Therefore, we recommend that the mandamus issue as prayed for by relator.

The opinion of the Commission of Appeals is adopted, and the mandamus awarded.

*C. M. Cureton,* Chief Justice.